**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

HAROLD S. DYKES,                              :

     Petitioner,                              :

vs.                                              :                    CA 19-0274-CG-MU

WARDEN DAN REDINGTON,                :

     Respondent.                          :

## <u>REPORT AND RECOMMENDATION</u>

Harold S. Dykes, a state prisoner presently in the custody of the Respondent,[1]

has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.

This cause is before the Magistrate Judge for issuance of a report and

recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR

72(a)(2)(R), on Dykes' petition for writ of habeas corpus with attachments (Doc. 1), the

answer of the Respondent with attachments (Doc. 9), Petitioner's reply to the Answer

(Doc. 11), and Petitioner's supplement to his reply (Doc. 13). Petitioner challenges a

probation violation arrest warrant, issued in 2003 but not yet executed, claiming that his

Fourteenth Amendment Due Process rights have been violated based on the

---

[1]     Dan Redington is warden of the facility in which Dykes is incarcerated in Missouri.
(*See* Doc. 1, at 12 (showing a mailing address of Bowling Green, Missouri)). However, though he
is incarcerated in Missouri, Dykes' dispute is with authorities in Alabama in lodging a probation
violation warrant/detainer. Therefore, the petition is properly brought in Alabama. *See Braden v.
30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 498-500, 93 S.Ct. 1123, 1131-32, 35
L.Ed.2d 443 (1973).

unreasonable delay in execution of the warrant, which he claims has resulted in prejudice and the waiver of jurisdiction by the Mobile County Circuit Court over any long-ago alleged probation violation.[2]

## PROCEDURAL AND FACTUAL BACKGROUND

On March 12, 2002, Dykes entered a counseled guilty plea to second-degree robbery and was sentenced to a term of 15-years' imprisonment; however, this sentence was suspended pending good behavior for five years after which the suspension of his sentence was to become permanent. (*See* Doc. 1, Appendix, Exhibit A, Docket Sheet). Thereafter, multiple delinquency reports were filed against Dykes (*see* Doc. 9, Exhibit 2A, Docket Sheet), "with the fourth and final delinquency report being issued on March 27, 2003." (Doc. 9, Exhibit 11, at 2; *compare id. with* Doc. 9, Exhibit 2A, Docket Sheet).

> A probation revocation hearing was set for April 23, 2003. Dykes failed to appear. A writ of arrest was issued on April 25, 2003, and the case was placed on the administrative docket, to be reset when Dykes was apprehended.

(Doc. 9, Exhibit 11, at 2; *compare id. with* Doc. 1, Appendix, Exhibit B).

---

[2]       An evidentiary hearing is not necessary in this case because the record precludes habeas corpus relief at this point. *Compare Means v. Secretary, Department of Corrections,* 433 Fed.Appx. 852, 855 (11th Cir. July 12, 2011) ("[W]here 'the record refutes [a petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.'") (citation omitted)), *cert. denied,* 565 U.S. 1217, 132 S.Ct. 1580, 182 L.Ed.2d 198 (2012) *with Allen v. Secretary, Florida Dep't of Corrections,* 611 F.3d 740, 745 (11th Cir. 2010) ("A district court is not required to hold an evidentiary hearing if the claims 'are merely conclusory allegations unsupported by specifics,' . . . or 'if the record refutes the applicant's factual allegations or otherwise precludes habeas relief[.]'"), *cert. denied,* 563 U.S. 976, 131 S.Ct. 2898, 179 L.Ed.2d 1192 (2011).

The first docket sheet entry after the April 25, 2003 issuance of the writ of arrest was on April 18, 2016, when Dykes filed a written request for certified notification to be sent to the Missouri Department of Corrections records department verifying that no outstanding warrant existed. (See Doc. 9, Exhibit 1A).[3] This request was set down for a hearing on May 17, 2016, for the Court to receive an update from the Probation Office on the outstanding writ of arrest; after receiving information at the hearing that Dykes had not reported to the Alabama State Probation Officer since 2003 and the there was an outstanding writ of arrest, the Court entered an order on May 18, 2016 denying Dykes' request. (*See id.*).

On June 13, 2016, Dykes filed a written request for final disposition of the probation violation warrant of arrest without a hearing and his presence; Dykes specifically requested that the warrant be withdraw and his probation reinstated to run concurrent with his present sentence in Missouri or, alternatively, that his probation be revoked and allow his sentence to run concurrent with his Missouri sentence. (*See id.*). This request was denied by written order entered on June 23, 2016. (*See id.*).

On June 12, 2017, Dykes filed a motion to dismiss the warrant due to unjustified tolling of the limitations period under Ala. Code § 15-22-54(a); this motion was denied by written order entered that same day. (*Compare id. with* Doc. 9, Exhibit 1A). Dykes filed an amended motion to dismiss on September 12, 2017, which was set for a

---

[3]     Dykes averred in this request that he was advised in September 2015 of a possible warrant out of Mobile County, Alabama and that this information had caused his custody level to be a 2, as opposed to a 1. (*See id.*). He also requested in the pleading that if the warrant was still active that it be withdrawn. (*Id.*).

hearing on October 5, 2017 and, thereafter, denied by written order dated that same day (*See id.*).

On or about November 6, 2017, Dykes filed a petition for writ of mandamus or, in the alternative, for prohibition in the Alabama Court of Criminal Appeals to compel Mobile County Circuit Judge Ben Brooks to grant his amended motion to dismiss and order his unconditional release from probation. (*See* Doc. 9, Exhibit 3). As the Alabama Court of Criminal Appeals observed, Dykes' motion, to dismiss (as amended), as well as the subsequent mandamus petition, were "premised on Dykes's argument that probation-revocation proceedings were initiated against him in 2003, that an arrest warrant was issued for the probation revocation, and that the arrest warrant has not been served on him in the intervening 14 years." (Doc. 9, Exhibit 5, at 1). Alabama's appellate court construed Dykes' petition solely as a petition for writ of mandamus and dismissed it on February 28, 2018 as untimely filed. (Doc. 9, Exhibit 5). Dykes filed this same petition in the Alabama Supreme Court on March 20, 2018 (Doc. 9, Exhibit 6) and Alabama's high court denied the petition on May 3, 2018 (Doc. 9, Exhibit 7).

Dykes filed a petition  for writ of prohibition in the Alabama Court of Criminal Appeals on June 7, 2018, seeking

> to prevent . . . Ben H. Brooks, circuit court judge for Mobile County, Alabama, from assuming [] jurisdiction [] he does not possess, as the State of Alabama waived jurisdiction over Dykes' probation violation charges, in that, the State's arbitrary and capricious actions or inactions rise to the level of gross negligence required for a waiver pursuant to well-established precedent when the State failed to make even a single attempt to reacquire custody of Dykes upon his release from official custody on 4 separate occasions over a period of 15 years. As a result, Dykes has suffered the most serious type of prejudice in the loss of witnesses and evidence for his defense. This violates Dykes' rights to

4

due process, as guaranteed by the Alabama Constitution and the 14th Amendment, U.S. Constitution.

(Doc. 9, Exhibit 8, at 2). The Alabama Court of Criminal Appeals denied Dykes' petition

for writ of prohibition on October 24, 2018. (Doc. 9, Exhibit 11).

Dykes contends he is entitled to a writ of prohibition preventing Judge Brooks from scheduling a hearing in this 15-year-old probation-revocation matter. Dykes, citing U.S. v. Barfield, 396 F.3d 1144 (11th Cir. 2005), argues that the State's actions or inactions rise to the level of gross negligence constituting a waiver of jurisdiction. Dykes claims that over a period of 15 years, his whereabouts were known or readily ascertainable.

In Jones v. State, 158 So.3d 500 (Ala.Crim.App.2014), this Court recognized that the

initiation of proceedings to revoke probation, such as the issuance of an arrest warrant or the filing of a delinquency report by a probation officer, . . ., tolls the running of the probationary term if the process is begun before the probationary term ends, . . ., and a trial court retains jurisdiction to revoke probation even after the probationary period has expired so long as the revocation proceedings were initiated within the maximum probationary term.

158 So.3d at 503 (quoting Woodward v. State, 3 So.3d 941, 944 (Ala.Crim.App. 2008) (citations omitted)).

Here, Dykes pleaded guilty to [second]-degree robbery and was sentenced to 15 years in prison on March 12, 2002. Dykes' sentence was suspended and he was ordered to serve five years on probation. Multiple delinquency reports were issued against Dykes, with the fourth and final delinquency report being issued on March 27, 2003. A probation-revocation hearing was set for April 23, 2003. Dykes failed to appear. A writ of arrest was issued on April 25, 2003, and the case was placed on the administrative docket, to be reset when Dykes was apprehended. Thus, the revocation proceedings were initiated well within the probationary term of five years for Dykes.

In United States v. Barfield, 396 F.3d 1144, 1149 (11th Cir. 2005), the United States Court of Appeals for the Eleventh Circuit held:

[In order for a delay in the execution of a sentence to be repugnant to the Fourteenth Amendment,] it is not sufficient

5

> to prove official conduct that merely evidences a lack of eager pursuit or even arguable lack of interest. Rather the waiving state's action must be so affirmatively wrong or its inaction so grossly negligent that it would be unequivocally inconsistent with fundamental principles of liberty and justice to require a legal sentence to be served in the aftermath of such action or inaction.. . .

> Dykes has failed to establish that the State's inaction was so affirmatively wrong or so grossly negligent as to be inconsistent with the fundamental principles of liberty and justice to require him to serve his full sentence.

> A writ of prohibition is the appropriate vehicle to challenge a lower court's actions on the basis that its actions exceeded its jurisdiction. See Ex parte City of Leeds, 849 So.2d 251, 253 (Ala.Crim.App. 2002). In order to prevail on a petition for a writ of prohibition, the petitioner must show: (1) that there has been an usurpation or abuse of power, (2) that there is no other remedy at law, (3) that the petitioner has suffered injury, and (4) that the question has been presented to the inferior court. . . . Dykes has failed to make the showings required for issuance of a petition for writ of prohibition, consequently, this petition is **DENIED**.

(*Id.* at 1-3 (most internal citations, brackets, ellipses, and quotation marks omitted)).

Dykes filed this same petition in the Alabama Supreme Court on November 7, 2018 (Doc. 9, Exhibit 13) and Alabama's high court denied the petition for writ of prohibition on December 13, 2018 (Doc. 9, Exhibit 14).

Dykes filed his petition seeking habeas corpus relief in this Court on June 5, 2019 (Doc. 1, at 12) to challenge a probation violation arrest warrant, issued in 2003 but not yet executed, claiming that his Fourteenth Amendment Due Process rights have been violated based on the unreasonable delay in execution of the warrant, which he claims has resulted in prejudice and the waiver of jurisdiction by the Mobile County Circuit Court over him and any alleged probation violation.

6

## CONCLUSIONS OF LAW

**A.**     **Standard of Review for § 2254 Petitions under AEDPA and Why Dykes' Claim is not Ripe for Review.** The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and is applicable to this case. *See Lindh v. Murphy,* 521 U.S. 320, 326-27, 117 S.Ct. 2059, 2063, 138 L.Ed.2d 481 (1997). The habeas corpus statute makes explicit that " a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only* on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis supplied); *Swarthout v. Cooke,* 562 U.S. 216, 219, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011) ("The habeas statute 'unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."'"). Here, while Dykes is claiming a violation of his Fourteenth Amendment Due Process rights, the undersigned agrees with the Respondent that those protections have not yet been triggered, given that the probation violation arrest warrant has not been executed; therefore, Dykes has not presently stated a claim which would entitle him to habeas corpus relief in accordance with § 2254.

Dykes is correct in recognizing that "[r]evocations of parole and probation are constitutionally indistinguishable[,]" (Doc. 1, Attached Suggestion  in Support, at 7 n.3), *see Gagnon v. Scarpelli,* 411 U.S. 778, 782 & n.3, 93 S.Ct. 1756, 1759 & n.3, 36

L.Ed.2d 656 (1973) (recognizing that there is no "difference relevant to the guarantee of due process between revocation of parole and revocation of probation[;]" stated differently, "revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole[]"), and is also correct that a probationer is constitutionally entitled to certain due process protections before a State may revoke his probation. *Compare id.* at 782, 93 S.Ct. at 1759-60 ("Probation revocation, like parole revocation, is not a stage of a criminal prosecution, but does result in a loss of liberty.[4] Accordingly, we hold that a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer[.]" (footnote added)) *with Black v. Romano,* 471 U.S. 606, 610, 105 S.Ct. 2254, 2257, 85 L.Ed.2d 636 (1985) ("The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation."). However, the Supreme Court did not hold or otherwise indicate in *Morrissey v. Brewer,* as Petitioner would have this Court believe (*see* Doc. 1, Attached Suggestion in Support, at 7-8), that probationers/parolees enjoy a due process right to timely and reasonable execution of a violation warrant. *See Morrissey v. Brewer, supra.* Indeed, the only relevant comments the Supreme Court made in *Morrissey v. Brewer* were that there must be "some minimal inquiry [] conducted at or reasonably near the place of the alleged parole violation or arrest as

---

[4]       In *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the Supreme Court recognized that a parolee has a liberty interest/right in remaining on parole and, therefore, is entitled to some due process before termination of that liberty. *Id.* at 482, 92 S.Ct. at 2601.

promptly as convenient ***after*** arrest[,]"[5] 408 U.S. at 485, 92 S.Ct. at 2602, and that the final probation revocation hearing "must be tendered within a reasonable time after the parolee is taken into custody." *Id.* at 488, 92 S.Ct. at 2603-04.

And if  it was not clear enough based on *Morrissey v. Brewer* that the constitutional protections afforded by the Fourteenth Amendment are not triggered until a probationer/parolee is taken into custody as a violator by actual execution of the warrant on the probationer/parolee, *see* 408 U.S. at 485 & 488, 92 S.Ct. at 2602 & 2603-04, the Supreme Court's decision in *Moody v. Daggett,* 429 U.S. 78, 79, 97 S.Ct. 274, 275, 50 L.Ed.2d 236 (1976) (framing the issue as "whether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violator warrant is issued and lodged with the institution of his confinement but not served on him") makes this proposition abundantly clear. Indeed, in reaching the conclusion that there is no requirement for an immediate hearing before a parolee is taken into custody as a parole violator, 429 U.S. at 86, 97 S.Ct. at 278, the Supreme Court in *Moody v. Daggett* drew heavily on its decision in *Morrissey v. Brewer.*

> [I]n holding that "[t]he revocation  hearing must be tendered within a reasonable time after the parolee is taken into custody, . . . we established [in *Morrissey v. Brewer*] **execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation**. This is a functional designation, for **the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant**.

.    .    .

---

[5]    The Supreme Court described this as the first stage of arrest and detention and preliminary hearing. *See id.*

9

> [W]ithout regard to what process may be due petitioner before his parole may be finally revoked, we hold that he has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant.

429 U.S. at 87 & 89, 97 S.Ct. at 278-79 & 280 (emphasis supplied); *see also United States v. Hinton,* 253 Fed.Appx. 839, 839-40 (11th Cir. Nov. 7, 2007) ("The Supreme Court has [] stated that because 'the loss of liberty as a parole violator does not occur until the parolee is taken into custody,' there is 'no constitutional duty to provide [the parolee] an adversary parole hearing until he is taken into custody as a parole violator.'"); *Kulich v. United States,* 2011 WL 6371878, *2 (N.D. Ga. Dec. 1, 2011) (recognizing that the "'operative event' that established custody was not the application for a parole violation warrant, but the 'execution of the warrant' on him[.]"), *report and recommendation adopted,* 2011 WL 6371876 (N.D. GA. Dec. 20, 2011), *aff'd,* 46 Fed.Appx. 618 (11th Cir. July 16, 2002). Similarly, in  *Carchman v. Nash,* 473 U.S. 716, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985), the Supreme Court favorably cited to its decision in *Moody v. Daggett, supra,* to make clear that it had "never held . . . that a prisoner subject to a probation-violation detainer has a constitutional right to a speedy probation-revocation hearing." *Id.* at 731 n.10, 105 S.Ct. at 3409 n.10; *see also Jauregui v. United States,* 2015 WL 248411, *4-5 (N.D. Fla. Jan. 20, 2015) (citing *Moody* and noting that a petitioner is deprived of no constitutionally-protected right simply by issuance of the violator warrant and, further, finding that the Petitioner did not have the right to challenge either the detainer and/or probation revocation proceedings until he is being held in custody on the basis of the violator warrant); *Jallow v. United States,* 2012 WL 4092487,

*2 (N.D. Ga. Aug. 27, 2012) (finding a movant has no right to a revocation hearing, or any other revocation proceeding, until federal officials take him into custody and that the issuance of an arrest warrant for violation of supervised release and a delay in executing that warrant does not deprive a probationer of his constitutional rights), *report and recommendation adopted,* 2012 WL 4092486 (N.D. Ga. Sept. 17, 2012); *see Maddox v. Cummins,* 2009 WL 5063013, *2  (N.D. Fla. Dec. 15, 2009) ("The failure to hold a hearing or resolve the detainer for violation of Petitioner's Florida probation, while he is still serving his Alabama sentence, does not state a violation of due process or federal law. Petitioner has no constitutional right to have his probation violation resolved prior to completion of his current sentence.").

In light of the foregoing well-established law, this Court finds that Petitioner Dykes has failed to state a claim which would entitle him to habeas corpus relief in accordance with § 2254 because the due process protections afforded him by the Fourteenth Amendment have yet to be triggered and will not be triggered unless and until there is execution of the probation violation arrest warrant issued by the Circuit Court of Mobile County, Alabama back on April 25, 2003 and Dykes is taken into Alabama's custody under that probation violation arrest warrant. In other words, execution of the warrant on Dykes and Dykes' custody under that warrant constitute the operative event that trigger any loss of liberty attendant upon probation revocation; therefore, since the arrest warrant has not been executed on Petitioner and he is not in Alabama's custody on that

warrant, he cannot at this time state a constitutional claim for habeas corpus relief.[6]

Dykes' petition for writ of habeas corpus, in accordance with 28 U.S.C. § 2254, is,

therefore, due to be **DISMISSED**.

To the extent Dykes would argue that other courts have rendered rulings on pre-custody delay in execution of the warrant and this Court should do likewise, the undersigned would simply point out that Petitioner has not cited a federal case,[7] which is binding on this Court, wherein the court found that a movant could state a constitutional claim for relief based upon pre-custody delay in execution of the arrest warrant *before* actual execution of the warrant and the taking into custody of the probationer/parolee under said warrant (or where a court had determined that a particular sentence was due to be executed). *Compare, e.g., United States v. Barfield,* 396 F.3d 1144, 1145, 1147 &

---

[6]     There can be no question but that *if* Alabama executes the arrest warrant on Dykes and takes him into custody under that warrant after completion of his sentence in Missouri that Dykes will be entitled to due process as set out in *Gagnon v. Scarpelli, supra,* and *Morrissey v. Brewer, supra.* Moreover, at such time, Dykes will be able to make all the arguments (regarding the delay and prejudice to him, etc.) he has attempted to pursue herein. *Cf. Fox v. Circuit Court of the Tenth Judicial Circuit Court ex rel. Polk County, Florida,* 2009 WL 3444812, *3-4 (S.D. Ga. Oct. 26, 2009) (citing the Supreme Court's decision in *Braden, supra,* the district court found that Petitioner was not entitled to relief under 28 U.S.C. § 2241 because he was seeking to litigate a federal defense to the probation violation warrant pending—but unexecuted—in Florida, and, extending *Braden,* found that habeas corpus petitions cannot be brought to litigate a federal defense to pending probation violation charges).

[7]     To be sure, the Alabama Court of Criminal Appeals arguably addressed a portion of Petitioner's constitutional argument in denying his petition for writ of prohibition; however, the undersigned is of the opinion that Alabama's criminal appellate court was mistaken in reaching its cursory determination regarding Alabama officials' putative "gross negligence" in absence of execution of the probation violation arrest warrant on Dykes and Alabama having Dykes in custody under that warrant. *See Alabama Bd. of Pardons & Paroles v. Williams,* 935 So.2d 478, 483 (Ala.Crim.App. 2005) (appellate court decision rendered only after Williams was taken into custody for violation of his parole and a parole hearing revoking Williams' parole occurred first in the trial court; only after these events was a hearing held on Williams' certiorari petition), *cert. denied,* 547 U.S. 1181, 126 S.Ct. 2357, 165 L.EDd.2d 283 (2006).

1148 (11th Cir. 2005) (appellate court reached the waiver of jurisdiction argument made by Barfield only after the district court enforced a federal sentence following an 8-year stay in execution of the sentence and Barfield self-surrendered on August 11, 2003 and began serving that sentence); *Mobley v. Dugger,* 823 F.2d 1495, 1496-97 (11th Cir. 1987) (appellate court addressed issue of whether Florida's delay in incarceration was so "affirmatively wrong" or "grossly negligent" as to violate due process only after Mobley was arrested and incarcerated—on December 30, 1983—pursuant to an alias capias warrant issued on September 22, 1983, some seven years after Mobley lived openly in Miami under his own name); and *Shields v. Beto,* 370 F.2d 1003, 1004-06 (5th Cir. 1967) (federal habeas decision made respecting Petitioner's due process rights only after the state court in Texas ordered the Petitioner, in 1962, to serve 2 years on a new charge of passing a forged instrument "plus the time not served as of December 5, 1934 on the 1933 convictions in Texas, an additional period of approximately 39 years.") *with Clifton v. McNeil,* 2008 WL 4329251, *1 & *4 (N.D. Fla. Aug. 28, 2008) (habeas corpus petition raising a claim that due process rights were violated by the Florida Parole Commission's failure to act with reasonable diligence in executing a 16-year-old parole violator warrant; this claim was asserted ***after*** Petitioner's parole was revoked following a hearing and he was serving a term of incarceration for violation of parole).

Because Dykes has not been deprived of any constitutionally protected rights simply by the issuance of the unexecuted violator warrant, he has not stated a claim that would entitle him to relief under 28 U.S.C. § 2254; therefore, his habeas petition should be **DISMISSED**.

13

**B.**     **Certificate of Appealability.**     Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Because Dykes' due process claim is not yet cognizable on habeas corpus review, the undersigned simply **RECOMMENDS** that this Court find that a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Petitioner should be allowed to proceed further. *Cf. Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000) ("[A] COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling[,]").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation. *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying

14

petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted,* 2011 WL 3241580 (S.D. Ala. July 29, 2011); *Griffin v. DeRosa*, 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D.Fla. Oct. 5, 2010).

## **CONCLUSION**

The Magistrate Judge recommends that Harold S. Dykes' petition for writ of habeas corpus (Doc. 1), filed pursuant to 28 U.S.C. § 2254, be **DISMISSED** because Dykes has failed to state a claim which would entitle him to habeas corpus relief in accordance with § 2254 inasmuch as the due process protections afforded him by the Fourteenth Amendment have yet to be triggered and will not be triggered unless and until there is execution of the probation violation arrest warrant issued by the Circuit Court of Mobile County, Alabama back on April 25, 2003 and Dykes is taken into Alabama's custody under that probation violation arrest warrant. Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis.*

## **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b);

S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 23rd day of April, 2020.

  s/P. Bradley Murray_____
**UNITED STATES MAGISTRATE JUDGE**

16